Good morning. Judge Martin and I are pleased to have our colleague from the District of Columbia Circuit, Judge Greg Katsos, here again with us this morning. He's taking on no extra pay, and we're grateful for that. We learn a lot from having colleagues from other courts sit with us, and maybe someday we can return the favor, Greg. Thank you very We know your cases. We know we've read your briefs, the authorities cited in your briefs, at least portions of the record. So, counsel, you should feel free to get straight to the heart of your argument in the limited time that's available to you. Pay attention to the traffic light system. Red means stop. Now, if you're finishing an answer to a question from the court, feel free to finish your answer, but do be mindful of the clock, please. If you're not, you may be giving up some rebuttal time, if that applies to you. So, yesterday I had an advocate who was quite aware of that, was mindful of it, and wanted to give up time and ended up having a minute less of rebuttal, but consciously made that decision that was very well done by that lawyer, and I appreciated that. But usually, lawyers don't want to do that, so just be mindful of our time. So, our first case is Cooper v. Midland Credit. Mr. Chami. Good morning, Your Honors. My name is David Chami, and may it please the Court, I represent the appellant, Keith Cooper, both individually and in his role as class representative for consumers similarly situated to him in the state of Georgia. I know Your Honor stated that you've looked at the briefs and read the briefs, but would you like a brief recitation of the facts? I don't know that that's necessary. As you know, the Court posed to the parties a question of justiciability, standing, and that was not something addressed in the briefs, but as you well know, that's a threshold issue of subject matter jurisdiction, the power of this Court to entertain this case, and you might want to go there first. Understood. The Court has asked us to talk about both Spokio and Nick Lau, and I'm prepared to do so. There's, I think, a clear distinction between the facts of Mr. Cooper's case, the appellant's case, and that of Nick Lau. Some of the Court's findings in Nick Lau or opinions in Nick Lau essentially asked, you know, whether Mr. Nick Lau had violations of the statutes that harmed him in the past or put him at risk of any future harm, and so some of the considerations in Nick Lau were whether or not there was any risk of future harm, and whether there was any real risk of future harm. And the reason that was posed was because, as I understand it, the Congress in this statute, as was true for the New York law at issue in Nick Lau, recognized that there can be, based on a violation of law, a risk of harm to an individual and that gives rise to a statutory damages remedy. One question, though, is, it's one thing to say that there was a risk of harm when the violation occurred, but when the complaint is filed, it seems to me that the standing case law from the Supreme Court tells us that we have to evaluate whether the plaintiff has either suffered an actual injury in the past or is today, as of the date of the filing of the complaint, at risk of an imminent injury in the future, right? Do you agree with that? I understand that's the Court's holding in Nick Lau, and I understand how it applied in Nick Lau. Do you think that that's what the Supreme Court case law requires? Well, I think the Supreme Court stated that Congress has the power to, or at least that we should be looking at, as instruction, their intentions. And the FDCPA, for example, is intended to protect the least sophisticated consumer from deceptive and misleading information, not unlike the Havens case, the Supreme Court talked about truthful information, when misleading and deceptive information can also be untruthful. And that is the harm, right? I mean, the statute defines the harm as the receipt of deceptive communications about a debt. And that's precisely our argument, Your Honor. And here's why I think this is different than Nick Lau. Regardless of my personal views on how the Court got to the decision it did in Nick Lau, the issue here is that this is zombie debt. It's debt that doesn't ever go away. So until Mr. Cooper, hopefully many, many distant years in the future, passes, this particular debt buyer, or any future debt buyers who they may sell the debt to, can pursue him as long as they don't violate the FDCPA. And that's the issue that we have. Well, tell me this. How is it that you could be injured by the receipt of misleading information if you are not misled? Well, Your Honor, this is an objective standard, not a subjective standard. So whether or not Mr. Cooper himself was misled is irrelevant. Well, the problem as I see it with that, though, is that the Supreme Court's case law about standing requires us to address whether there's an actual or imminent injury for the individual plaintiff that is concrete and particularized. Particularized meaning specific to that individual. So whether or not Mr. Cooper suffered a harm is not something, or whether he was misled, is not something that can be decided or determined at the motion to dismiss stage. Mr. Cooper hasn't been given an opportunity. He has to allege enough facts, though, to establish standing, right? And what we've alleged, and I agree with that, Your Honor, and I agree that you need to allege facts. So the proper, assuming that the district court believed that there wasn't enough facts alleged to allow them to make that determination, then the proper thing would have been to dismiss with leave to amend, or offer plaintiffs leave to amend the complaint rather than dismiss. Did the plaintiff ask for that? Did the plaintiff ask for leave to amend? Right. As I stand here at the moment, I'm not positive, but I believe we did. Yeah, I don't think the record reflects that, but... Does the complaint allege any injury other than receipt of a communication that you say is misleading? The complaint, as drafted, states that it does identify what was misleading, why it was misleading. But it doesn't allege that any later harm befell Mr. Cooper, or might have befallen him, right? That he would have hired a lawyer, or... But he did hire a lawyer. That's how he got here. I mean, I think the reasonable inference is that he received a communication that caused him enough concern to seek legal help. And I don't think that Mr. Cooper needed to plead in his complaint. Do you think that's an injury? I think it's an injury. If a consumer receives a communication that he believes might cause him legal jeopardy, and is uncertain of the ramifications of that... What's the injury? The fact that he sought legal counsel is injury? The fact that he was receiving communications for attempts to collect on debts that were so old that he could no longer be legally pursued for them, although the least sophisticated consumer... And granted, as a lawyer, I may understand the disclosures, but most people I know don't understand. Here's my problem. Your client understands, as of the date of the filing of the complaint, that that debt is not enforceable against him, right? Obviously, after seeking legal counsel, he would be informed and was informed that... I mean, because he alleges that it's not legally enforceable. He clearly understands that. Of course, at the advice of counsel, by that point, he understands it. Did he have to pay the lawyer? He would be responsible for legal fees, of course, for pursuing any claim. Wasn't a contingency fee? No. The FDCPA is a fee... None of that's alleged in the complaint. The relationship typically is between an attorney and their clients. It's not information that's alleged in the complaint. Yeah, no. The problem, though, is you have to allege the facts that would establish a concrete injury. And this is where I think we fall back on the Supreme Court's interpretation of receipt of truthful information on why the FDCPA is different than the New York statute at issue in NICLAO. The New York statute in NICLAO, and as this court identified, that that was protecting other individuals. Here, the FDCPA is not targeting the protection of other individuals. It's intended to protect the recipient. Yes, but then the reason is because if the recipient gets misleading information, there's a risk that that recipient will then act on it in a way as alleged in the complaint. The plaintiff might, for example, be misled into believing that they needed to make a payment and, as I understand the allegations of the complaint, which we have to accept as true, might be led in making that partial payment into a decision that basically revives the debt. Is that right? That is right. I mean, that's clearly alleged in the complaint. It seems to me the problem with it is, though, that the plaintiff's allegations also establish that the plaintiff understands that that is something he shouldn't do, he hasn't done, and won't do. Well, if only plaintiffs who've actually made a payment are the ones who have standing, then you may never have an opportunity to get redress for consumers who have yet to receive these collection letters. The intent is to protect not only Mr. Cooper, but other consumers. And I have five extra minutes. I'm going to roll over a little bit into my rebuttal time, Your Honor. Okay. But the intent is to protect not just Mr. Cooper, but consumers similarly situated who haven't had the wisdom to seek legal help and identify these, who then have identified these collection letters in a way to be able to have legal counsel tell them. Yeah, but the problem is that Article III, the case for controversy requirement in Article III of the Constitution, is supposed to be about safeguarding the judiciary from getting involved in abstract questions, non-concrete kind of issues, so that we're not just pining about things that really just don't matter. But this Court already considered, post-Spokio and Church v. Accretive Health, had considered in the context of the FDCPA, the receipt of truthful information, and I believe that's an unpublished decision out of the Eleventh Circuit. But the Court did find, post-Spokio, that the FDCPA required truthful information and that gave standing to the plaintiff in that case. And then similarly, in Cordoba, which is this year, the Eleventh Circuit, in a published decision, distinguished Nick Lau and found that the plaintiff in Cordoba, in fact, did have standing for very similar reasons that the Supreme Court found standing in Havens in Spokio. Although in Spokio, I think they just remanded. But clearly, the eight justices in Spokio all found or believed that the issues in Spokio would likely have given the—I think it was Justice Thomas and the four concurring justices, Ginsburg, Sotomayor, found that the information in and of itself had given the consumer standing in Spokio and didn't need to go down to the ninth circuit. Right. Because the information was pretty sensitive. It was release of false information about the income, the marital status, the health of the individual. Right. Pretty easy to see why that's a concrete injury. And the court analogized it. The court said that would be tortious at common law. This seems pretty different. This seems like it's creating a statutory claim for fraud in a case where there's neither reliance nor resulting harm. So I understand Your Honor's point, except that, like I said, the intent of the FDCPA is not to just protect Mr. Cooper. It's an objective statute which requires us to look at it from an objective standpoint. So how would the least sophisticated consumer read— Mr. Chami, you've taken three minutes of your rebuttal. I'll save it. Let's save two of them. You got it. Mr. Espy. Good morning, Your Honors. Chase Espy for the Appalachian Midland Credit Management. I know you said we're picking up where we left off yesterday. I don't know if much of this is familiar. So I wanted to begin, if I may, by starting with something that makes this case different from the trickle case we talked about yesterday. And that's the district court's opinion. And the principles and legal issues are essentially the same. But the district court's opinion in this case was decided on, you know, phrased slightly differently when it found that the plaintiff had failed to state a claim, such that although its reasoning was on 12B6 grounds, the same logic and same analysis and result could be applied to the issue of standing. There were some mistakes in the district court order, weren't there? I mean, he, for example, said the consent decree prohibited your client from selling the debt. And that's not true, is it? It does, Your Honor. It does prohibit. It says time-barred debt. No, your client could sell that debt. No, Your Honor. Not under the CFPB consent decree. There is a prohibition on the resale of time-barred debt. It could sell it back to the owner of the, I mean, the original owner of the debt. Could it not? I don't recall specifically whether that's the case, but. You can take a look at it. Okay. And, but on that point, we also have cited other cases that are in the same posture involving Midland that have gone to summary judgment where the policy, Midland's own policies have been produced and put into evidence. Which are not in evidence in this case. Correct. They might be subject to judicial notice. But as the district court said in this case, in a footnote, if we know discovery would have shown that he was never going to get any further than what he alleged in the complaint, then we might as well grant the motion to pass. Mr. Espy. The district court did not decide this though based on standing, right? No, Your Honor. It did not. It did not look at the law standing, right? Correct. But I don't know why you would want to start with the merits determination by the district court when we've said what we want to talk about is just disability and particularly when that was the entire time that your adversary spent. I'd actually love to talk about the merits. We've got to get the jurisdictional issue resolved. I'm about to, Your Honor. Just from the opinion that says Cooper seeks to have a class action certified based on the remote possibility that a consumer could be misled into renewing. Well, he says the injury is that he received, what he says this morning is that he received misleading information and that in and of itself is an injury for purposes of Article 3. Why is that not right? It's not for that same reason. It's based on speculation and possibility. The rubric for where we... He says I received it. He did. But as you said when you were pointing out earlier the different distinction between harm that's been suffered in the past or might be suffered in the future when we're talking about future harm... In the past, I received misleading information. That in and of itself, Congress has defined as an injury. Why isn't that enough? Well, the receipt of the letter itself can't be... But isn't that what the statute prohibits? Well, that's right. So the statute broadly prohibits a receipt... A debt collector may not use false or deceptive... Right. The question then has to become what misled how and to what end and to what effect? There's no allegations in the complaint that show how he was misled in what way. We received what he says is a deceptive letter. But it can only be deceptive if one is deceived or misled or could conceivably be misled. And so yesterday we had this exchange about, I asked your colleague, is it your position that Mr. Tritchell would have had to make a payment in order to suffer injury sufficient to have standing? And he said yes. And then later he said he didn't understand my question. What is your position about that? In your view, would this Mr. Cooper have had to have made a payment in order to have an injury sufficient to have standing under the statute? He would have had to have made a payment in order to have standing for the claim that he is asserting that the possible revival of the statute, because that is a necessary condition of having a statute expired debt revived. But it's not even sufficient. There are other ways, other things under Georgia law and it varies state by state. But under Georgia law, it has to be in writing, signed by the debtor. And for example, the letter. You would just assume for me that that Georgia statute is out of the picture just for this purpose of this question. Payment required in order to have standing? For this claim, yes. I think the way it came out yesterday, Judge Pryor posed a hypothetical back to my colleague and said if the claim were stated differently and based on just the receipt of the letter or because I had to go hire a lawyer and that was my harm or something like that, then it might be a little different. But when the claim is misleading. Can I follow up on that? So you would not be a great poker player because you are nodding your head as Judge Pryor is asking the question. So I take it that you subscribe to his view that we look to determine standing at the time the complaint is filed and if a plaintiff has been to a lawyer and the lawyer said this debt is not enforceable against you, then there is no standing. So is that your position? I think that is right, Your Honor. I have a hypothetical and I know this is not the facts of this case. So let's just say all that happens. I go to a lawyer because I am scared about this letter. And the lawyer says it is not collectible. Don't worry about it. But I just don't believe the lawyer. I am still worried about it. It is keeping me up at night. I am afraid the lawyer is wrong. And I bring suit saying all that. Standing, no standing? I don't know that it would be standing. There would certainly have to be plausibly alleged, you know, maybe emotional harm or something like that. Yeah, I do that. You know, a lawyer has told me it is not enforceable, but I don't believe him. So here is my suit. Well, I don't know that you could plausibly allege that you did suffer that harm. How do you make that determination on a 12B6? Well, we make allegations, or excuse me, determinations all the time about what is plausibly inferrable from the facts that are alleged. You think you can make a determination on 12B6 about, you know, whether I am plausible about whether I am upset or not? Well, if you are saying you are upset because you don't believe the plain language of a letter that is undisputably true, then yes, potentially. No, no. I mean, we are assuming for purposes that this is, I am saying the letter was deceptive. The lawyer has told me it is not collectible. I don't believe my lawyer. I am upset about it. I allege all that in my complaint. Well, it is not just what he has told my lawyer. I assume that in this hypothetical, the letter also still includes the disclosure language that was included in the letter in this case. Same letter. Right. So it wouldn't be a plausible inference to say that you don't believe it when it is an accurate statement of the law. Because of the age of the debt, you cannot be saying we were willing not to say it. I was wondering about it from the opposite way. And that is, if the allegation from the plaintiff is, my lawyers told me this debt is not enforceable. Because the statute of limitations has expired. But I don't believe my lawyer. Then have you alleged that it is misleading? I don't think so, Your Honor. And not a plausible. Because I don't know how you can have it both ways. Right. And because the disclosure is not, it is no dispute that it is true and it is accurate. And so part of the FDCPA's prohibition is on using false information and things that are accepted. But the disclosure language itself is a true statement, both of the law and what will happen based on Midland's own policies. And he wouldn't have been sued. So it's not a plausible allegation. The plaintiff has to allege that it's misleading. But if the plaintiff is alleging, I've been told by my lawyer that it means one thing. But I actually believe that actually the letter is true. And the plaintiff isn't alleging that it's misleading. That's absolutely right, Your Honor. And when we're talking. I think Judge Breyer is changing my hypothetical, just so you know. Maybe I don't understand it. What so? No, it alleges deceptive communications. But it just alleges, it's basically a recitation of the elements of the cause of action. It's just saying that it's deceiving or misleading doesn't make it so. You have to say how, plausibly allege how it is misleading. Why was this misleading? And in what way and to what end? Here, the allegation is that because it could have potentially tricked him into making a payment, reviving the statute, then being subject. And we'll bring the Georgia statute back into it. It's deceptive for me because they didn't tell me if I make a partial repayment, it revives the whole debt. So that's still based on that speculation and that chain of possible events in the future. And so I wanted to talk about what's plausibly alleged and how we'd make that determination for standing. I think it's a good segue to something that Mr. Shammi said earlier about the least objectively sophisticated consumer standard. And that's right. That's how FDCPA claims are evaluated for plausible stating a claim under the statute. Just before we leave the question of emotional harm, the worry of a plaintiff who gets the letter, isn't really sure, starts worrying about his situation. Regardless of whether or not that would be a sufficient Article III injury, I didn't read the complaint as alleging that theory of standing. Correct, John. I think that was only an issue in Judge Martin's hypothetical, but it's not alleged in the complaint. In fact, I re-reviewed the complaint again, and Mr. Shammi may think differently, but as I read it, there's only really one paragraph in the complaint that could even remotely be construed as an allegation of harm. And in that paragraph itself, it's paragraph 32. The last sentence says, well, let me go back. It says that the letter is misleading in a deceptive sense. It fails to advise plaintiffs that if he takes advantage of any of the payment options, it could restart the statute of limitations, exposing him to a potential lawsuit, potential lawsuit. And then it closed, effectively, if he takes advantage of any of the options, he is in a worse position than if he had done nothing. So even the only paragraph in the complaint that could remotely be read as alleging a harm sufficient to confer standing, acknowledges that it's conditional, and it's a big if. If he had taken advantage of the options, then he might be exposed. And even then, it would only be if he took advantage of the payment options in particular ways because of the Georgia statute. The letter, for example, offers to call and make a payment over the phone. That certainly wouldn't affect a revival under Georgia law. It also offers to make a payment online. It may be arguably whether there's a writing. Or you can mail a payment in and return the coupon. It's not altogether clear, and it's certainly not even alleged, that that coupon itself will be a sufficient writing under Georgia law to affect revival of the statute of limitations. He also could have, instead of sending a check, he could have put cash in the envelope as part of his partial payment plan. And that wouldn't have affected a revival under the statute. So that's why even in that paragraph of the complaint, it's a big if. It's all based on these potential things that could happen in the future. And there's no imminent risk of harm, which is necessary under Clapper and Spokio and other cases when we're talking about the risk of future injury. So it's actual or imminent, to be clear. Yes, Your Honor. But when we're talking about a future injury, it has to be imminently impending and not based on possibilities or speculation. And that's for Clapper, in this Court's opinion, the Georgia Republican Party quoting Clapper. And Judge Pryor's point earlier about, you made it well, that there's a difference between the least sophisticated consumer and the particularized injury that a plaintiff has to allege for himself to have standing. And there was a recent case from the Northern District of Illinois, an FDCPA case about a letter. It wasn't a time-barred disclosure letter, but about a letter that was referring to late charges. And it's, I'll go ahead and tell you, it's Perea, P-E-R-E-A. And the Westlaw side is 2019, Westlaw 475-0283. But it says, the Court addressed this very thing and said that that argument, saying that, oh, we have to do this under an objective standard, mixes up the substantive standard for liability under the FDCPA with the requirements for Article III standing. I think that is right. I mean, I think that's confusing. But so, I mean, what you're talking about sets a stricter standard for standing than, I mean, we would kind of never get to the merits of a Fair Debt Collection Act, which is judged on an objective standard. I don't think so, Your Honor, because the difference is about the only people with standing who have been harmed can represent the rights of other people who have standing as well. In that same case, they were quoting the Casillas case from the Seventh Circuit that was also on FDCPA's case on standing and said, the unsophisticated or least sophisticated consumer standard is a rule for interpreting a debt collection letter to determine whether it is misleading. It is not a rule permitting those who have not been injured to vindicate the rights of those who have. And that's what we have here. Mr. Cooper has not been injured. He might in the future if he made a payment in a certain way, which affected revival under applicable state law, as he acknowledged in the complaint. What if he had to make a payment to a lawyer? Is he injured? Not because of the letter that he got. Not because it was deceptive or misleading. What if he didn't talk to the lawyer about anything else but that deceptive letter? He may have another claim, but it's not under the 1692E of the FDCPA. Why not? Because there's nothing, he's not deceived or misled by the letter that made him go talk to the lawyer. And Mr. Shumvey made a point in his response. So I'm sorry, if he alleges that he retained a lawyer and paid money to a lawyer because he got this letter and didn't know what to make of it and was concerned, you think no standing? Well, that's a different question from the allegation of stating a claim, okay? I just want to be helpful. We're asking about standing. Sure. Isn't that an actual injury? Well, that's what I was going to say. That's why it depends on what the claim is because, yes, it could be an actual injury. Could be. Let's say he alleges that. And that he paid the lawyer. That's an injury, isn't it? Yes, Your Honor. But that's not the facts that we have here. And I think that makes a difference because of the claim that's been asserted and the lack of allegations directed to his particularized injury. I know we're over, but I'm sorry, just one quick question on the merits. The district court construed this notice as making an unequivocal promise not to sue. Even if the company received a partial payment that revived the statute of limitations. Is that your position? Was that promise made in that way? I think that, yes, my position is that the letter means what it says. You are representing to us as an agent of your client that your client would not sue even if it received a partial payment that revives a statute of limitations. That's absolutely right, Your Honor. And that goes to the policies that come out in other cases. That's all I need. May I follow up on that? So who, it says, we will not sue you. That's, I'm reading from the letter. Who's we? I can't remember if it's in the party section of the allegations of the complaint, but it's. No, I'm just asking when you read the letter, who's we? Right. Midland Credit Management, the appellee in this case, is who sent the letter. And that's the letterhead that's on it, MCM, because that's the servicing arm of its parent company, which is just a holding company that buys the debt. So that's Midland Funding. It's not a party in this case, but that's the structure. And so Midland Funding doesn't have any. The one person is we. I mean, one corporation is we. It's the, it's the holder of the debt and the company that's servicing that sent the letter. So it's two companies are the we? Yes, Your Honor. Okay. I think that's a shorter way of saying it. Okay. Thank you, Your Honors. Felt like you were back in federal courts, Mr. Espin. I don't know which one was harder. Okay, Mr. Chammy. All right. Well, I have two minutes, and you said a lot. He went over a little. I might let you. I want to comment on the issues here. The risk of harm has not ended. How so? Your client alleges in his complaint that he understands that that's not true. Well, of course. But they're going to still and can still attempt to collect from him in the future. And the fact that he . . . And he won't be misled because he knows the truth. Understanding, Your Honor, that he understands that a partial payment could revive the statute of limitations. And that the statute of limitations is expired. Of course. And that, therefore, he's not responsible for . . . and it's not an enforceable death. But again, we cannot turn an objective statute into a subjective statute. It's whether the communication itself is misleading. I'm not talking about the statute. I'm talking about whether he suffered an actual injury or he's at imminent risk of suffering one. And it's whether he suffered an actual injury at the time he received the letter, Your Honor. And I understand your point about that. So your point is, and in this case really rises or falls, doesn't it, on whether the receipt of that communication, which you term misleading, is in and of itself an actual injury for purposes of Article III. Correct. And although I . . . If it is, then you have standing. If it's not, you don't. Based on Nick Lau and I think the way this conversation is going, I think that's the way the Court . . . Well, I mean, look, push back. If there's something more here that I'm missing, let me know what it is. Well, so I think if we were to take the FDCPA at its face and say that as soon as a consumer learns or becomes educated about the language in the agree . . . or the letters that is misleading, they therefore now have, I guess, they're no longer misled and therefore they can never have standing, I think that's a problem because then the statute loses its teeth. That argument, the problem with that argument is that would require us to say, well, if Congress has said that this is a problem that needs to be remedied, that we have to defer to their decision about that for purposes of basically policing our own understanding of the case or controversy requirement of Article III. It has been true since almost the founding of the Republic that Congress has tried to give the Federal Judiciary jurisdiction over things that the Federal Judiciary has decided it doesn't have the power to decide under Article III. That's what the . . . what were those cases about the invalid, the revolutionary war wounded who wanted . . . Congress was going to create a process to where the wounded from the Revolutionary War could apply for a pension. After the courts decided whether they were entitled to it or not, it would be subject to the Secretary of War to decide whether to approve it or not. The Supreme Court said, sorry, you can't do that. We can't just defer to whatever Congress says. Isn't that right? I would agree with that wholeheartedly, Your Honor. I thought we were textualists. I'm a textualist, but the case or controversy requirement is a part of the text of Article III, right? I agree with that, Your Honor, but I think the Supreme Court has already said to us, though, that this type of harm, untruthful harm in disclosures is give standing. That's the Havens case. The consumer had no intention of renting an apartment. She wasn't misled. It wasn't relevant that the plaintiff, the appellant in that case, or the plaintiff in that case had any. That's a plaintiff, though, who sought the information. Is this property for rent or not? Right, but she knew. And was told that it was not, which was false. Correct, but she knew it was false. After asking for it. But she knew it was false. The problem here is this plaintiff, your client didn't ask for anything. Your client just got this misleading communication. Isn't that worse, Your Honor? The plaintiff in Havens knew it was false. Now, I don't know that I regard it as worse if I go out and seek information and I'm told, and I want the truth, and I'm told a falsehood. I don't know that I view that as less of a harm than if I get a communication in the mail that I never saw it in the first place that didn't mislead me. But it did, but I don't think that that's... Where's the allegation that it misled your client? Well, there's a paragraph in the complaint that essentially says he received this information, it was misleading, and he was harmed by it because it was misleading. It's a conclusory statement that he suffered harm. But I think taken in context with the specific issues that he claimed are misleading, then it's a reasonable inference, and I don't think dismissal. We've let you go a fair amount over, Mr. Cheney. Thank you, Your Honor. Thank you for your argument. I think we understand your case, and we'll take it under submission. Thank you all. Automotive Alignment and Body Service versus State Farm. Thank you.